FILED

08/15/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0740

DA 16-0740

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 201N

IN THE MATTER OF THE PETITION OF THE
WATER USERS OF INDIAN CREEK WATER USERS
FOR APPOINTMENT OF A WATER COMMISSIONER.

MELANIE J. KNADLER, Personal Representative of the
Estate of PEARL JANE HARK,

       Interested Party and Appellant,

   v.

QUIRK CATTLE COMPANY,

       Respondent and Appellee.

APPEAL FROM:    Montana Water Court, Cause No. WC-2016-02
                Honorable Russ McElyea, Chief Water Judge

COUNSEL OF RECORD:

       For Appellant:

           Jacqueline R. Papez, Jack G. Connors, Doney Crowley, P.C.,
           Helena, Montana

       For Appellee:

           Scott D. Hagel, Crowley Fleck PLLP, Kalispell, Montana

                      Submitted on Briefs:  June 21, 2017

                            Decided:  August 15, 2017

Filed:

                           _____
                                   Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The water right issue between Pearl J. Hark (Hark) and Quirk Cattle Company (QCC) dates back at least thirty years. Separately, Hark and QCC hold three of the senior water right claims on Indian Creek: (1) QCC's 1884 claim for 5 cfs, 76D 118113-00 (QCC's 1884 Claim); (2) Hark's 1890 claim for 1.25 cfs, 76D 140172-00 (Hark's 1890 Claim); and (3) QCC's 1894 claim for 7.5 cfs, 76D 118111-00 (QCC's 1894 Claim). Central to this dispute is the priority between the latter two claims. QCC's 1884 Claim has never been disputed by Hark.

¶3 In 1984, the Water Court issued the Kootenai River Temporary Preliminary Decree for Basin 76D. QCC objected to Hark's 1890 Claim on the basis of priority. However, on February 26, 1985, QCC and Hark entered into a Water Use Agreement (Agreement), which stated:

> [W]hile the parties recognize the first and senior appropriative rights of the Quirk Cattle Company in and to the waters of Indian Creek and the ditch and pipeline rights of the Quirk Cattle Company, the parties and their predecessors in interest have historically shared the waters of Indian Creek and are desirous of providing for their continued cooperation and sharing of the waters of Indian Creek in accordance with those established practices[.]

Except for further Whereas Clauses, the Agreement stated in full:

2

NOW, THEREFORE, in consideration of the respective rights of the parties and the mutual promises and agreements hereinafter set forth, the parties hereby agree as follows:

1. That the Quirk Cattle Company has the senior and first appropriative right to the waters of Indian Creek, both through filed appropriations and historic and long-continued use.

2. That the Quirk Cattle Company has the right to appropriate all of the waters of Indian Creek through its ditch and pipeline referred to hereinabove, and does so appropriate all of the waters of Indian Creek, during conditions of low water.

3. That as the volume of the flow of the waters of Indian Creek increases, the parties have historically shared the waters of Indian Creek during such times of surplus flow.

4. That during such periods as there exists in Indian Creek a volume of flow in excess of the needs of the Quirk Cattle Company, the parties have historically shared such waters and the Harks have diverted the waters of Indian Creek at such times for application to beneficial uses upon lands owned by Hark through the ditch and pipeline of the Quirk Cattle Company herein-above mentioned.

5. The parties hereby agree that they shall continue to apportion and share the waters of Indian Creek in accordance with their established practices.

6. That this Agreement shall be binding upon and inure to the benefit of the successors in interest of the parties.

The Agreement was signed by Leland Driggs, President of QCC, Pearl Hark, and Hark's sons, Frank Rettig (Rettig) and Grant Hark (Grant). Simultaneously with the signing of the Agreement, Rettig and Grant signed affidavits affirming that QCC had "claimed and continuously put to beneficial use the first waters of Indian Creek."

¶4     The Agreement was filed with the Water Court, and QCC withdrew its objection to Hark's 1890 Claim. The Water Master incorporated the text of the Agreement in the Master's Report for 76D-58. The Master's Report stated that the Agreement "resolved the

3

objections by Quirk Cattle Company to Pearl Hark's claims" and found that "[t]he agreement reached between Quirk Cattle Company and the Harks should be incorporated in the decree." On August 24, 1987, then-Chief Water Judge W.W. Lessley incorporated the text of the Agreement into the Temporary Preliminary Decree for the Kootenai River Basin.

¶5 In 2015, by motion filed with the Water Court, Hark challenged an issue remark that had been placed on the Hark 1890 Claim abstract indicating the claim was subject to the Agreement. Noting that the remark had not been placed on the claim when initially filed, but had been added in 1993 without notice, Hark argued the remark was incorrect and should be removed. The Water Court, noting that there may have been a failure "to follow a clearly defined process in 1987" when attempting to add the remark to the three claims subject to the Agreement, stated that, however, "[i]t is apparent Hark is not seeking to correct a clerical error or procedural oversight. Rather, she is contesting the enforceability of the 1985 Water Use Agreement with respect to [the Hark's 1890 Claim]." Associate Water Court Judge Douglas Ritter concluded:

> While the specific water right claim numbers are not listed [in the Agreement], the intent is clear. Quirk has senior rights, entitling it to all the waters of Indian Creek at low water. During high water, Quirk and Hark historically shared the use of Indian Creek. The parties agreed to continue to abide by this basic understanding and bind their respective successors in interest accordingly. Since the Water Use Agreement was filed in case 76D-58, which included Hark['s] Indian Creek claim 76D 140172-00 [Hark's 1890 Claim], and Quirk withdrew its objection based on the Agreement, there is no doubt this claim is one of the high water rights owned by Hark and is subject to the terms of the Water Use Agreement.

The Water Court's order was entered on June 26, 2015, and was not appealed.

4

¶6 On July 5, 2016, a Hark representative contacted the Water Commissioner for Indian Creek and requested distribution of water "based on Ms. Hark's 1890 Right." Hark asserted there was sufficient water in Indian Creek to fill the two senior water rights (QCC's 1884 Claim and the claim of another party not in this action), as well as the Hark 1890 Claim. The Water Commissioner refused, citing the Agreement, and allowed QCC to fulfill its 1894 Claim ahead of Hark's claims.

¶7 Hark filed a Verified Dissatisfied Water User Complaint with the Nineteenth Judicial District Court, asserting a right to divert water based on priority under the Hark 1890 Claim. QCC petitioned the District Court to certify the priority question to the Water Court, which was granted, and then moved the Water Court for summary judgment. Hark answered, moved for discovery pursuant to M. R. Civ. P. 56(f), and moved to strike portions of QCC's summary judgment reply brief. Hark's motions were denied. In its summary judgment order, the Water Court explained that the scope of the certified question encompassed fourteen water right claims (three for Hark and eleven for QCC), but that the three claims cited *supra* were "central" to the dispute. The Water Court concluded that there was no ambiguity regarding the priority issue in the Agreement:

> Ambiguity exists when reasonable people disagree as to a document's effect and meaning. A Water Master, two Water Judges, and a water commissioner have all either directly or impliedly concluded that the Agreement subordinated Hark's right to the rights of QCC. The only person who disagrees is Hark, who waited three decades to assert an alternative interpretation, and declined to appeal Judge Ritter's 2015 determination that her Indian Creek right was part of the Agreement she signed.

5

The Water Court held that "[t]he Agreement subordinates [Hark's] Indian Creek water rights (claims 76D 140170-00, 76D 140171-00 and 76D 140172-00) to QCC's rights on Indian Creek," and entered summary judgment in favor of QCC on the question.

¶8 Hark appeals, arguing the Water Court abused its discretion when it denied both her motion for discovery under M. R. Civ. P. 56(f) and her motion to strike part of QCC's reply brief, erred in its interpretation of the Agreement, and erred in the determination of the scope of the order by including Hark's Indian Creek Ditch water right claim, 76D 140171-00, as one of Hark's Indian Creek water rights, and leaving Hark's Derozier Creek water right, 76D 118115-00, in the caption of the order.

¶9 Starting with the procedural issues, we find no abuse of discretion by the Water Court in denying both Hark's M. R. Civ. P. 56(f) motion and motion to strike. "District courts have inherent discretionary power to control discovery," including the power to "decide[] whether to deny or to continue a motion for summary judgment pursuant to Rule 56(f)." *Envtl. Contractors, LLC v. Moon*, 1999 MT 178, ¶ 19, 295 Mont. 268, 983 P.2d 390. The Water Court correctly noted that the dispute regarding the relative priorities on Indian Creek "is not in its infancy," and that Hark's reference to "selective use of facts by QCC, if true, suggests that Hark is in possession of alternative information that she can use to respond to QCC's assertions." We find no abuse of discretion in the Water Court's handling of the summary judgment proceedings and in its denial of Hark's procedural motions.

¶10 We also find no error in the Water Court's interpretation of the Agreement on the narrow question of priorities among water rights. First, the language of the Agreement is clear. *Anderson v. Stokes*, 2007 MT 166, ¶ 33, 338 Mont. 118, 163 P.3d 1273 ("If the language of a contract is unambiguous—i.e., reasonably susceptible to only one construction—the duty of the court is to apply the language as written."). The Agreement provides that QCC "has the senior and first appropriative right to the waters of Indian Creek, both through filed appropriations and historical and long-continued use." It recognizes that QCC "has the right to appropriate *all* of the waters of Indian Creek . . . and does so appropriate all of the waters of Indian Creek, during conditions of low flow." (Emphasis added.) This language is clear on its face and means that QCC holds appropriative rights senior to those of Hark on Indian Creek. Secondly, the Agreement only makes sense if it served as the basis for QCC's withdrawal of its objection to Hark's 1890 Claim. QCC challenged the priority of Hark's 1890 Claim. As noted by the Water Master in 1987, the Agreement "resolved the objections by Quirk Cattle Company to Pearl Hark's claims." As the Water Court reasoned, "[a]n interpretation of the Agreement that did not subordinate Hark's right to QCC's other Indian Creek rights would have made the Agreement unnecessary" because nothing else was needed to administer the rights in the priority they were originally claimed. We find no error in the Water Court's conclusion that "[t]he Agreement subordinates [Hark's] Indian Creek water rights . . . to QCC's rights on Indian Creek."

¶11    While we affirm the Water Court's entry of summary judgment on the priority issue before it, we note that there are further questions between Hark and QCC regarding water use on Indian Creek not addressed in this proceeding. The Agreement also recognizes, while QCC appropriates all of that water "during conditions of low water," that during times of surplus flow the parties had "shared the waters of Indian Creek." That "sharing" occurred when "there exists in Indian Creek a volume of flow in excess of the needs of the Quirk Cattle Company." The Agreement provides that the parties "hereby agree that they shall continue to apportion and share the waters of Indian Creek in accordance with their established practices." The Agreement, which is very brief, does not define the terms of this sharing arrangement, such as "surplus flow" and the parties' "established practices," and these remain to be defined and resolved between Hark and QCC. Based upon the allegations of Hark's complaint, which was specifically grounded in priority, these other issues were not raised here and this proceeding was not appropriate for such determinations. Accordingly, we do not resolve these questions.

¶12    Finally, the Water Court appropriately included Claim 76D 140171-00 in the scope of its order to the extent that the claim is covered by the Agreement and is an Indian Creek right, because the Agreement itself was limited to only the waters of Indian Creek. On appeal, and with no evidentiary foundation, we make no determination or holding that the right should or should not be considered an "Indian Creek" or "Indian Creek Ditch" right— the decree held that 76D 140171-00's source is Indian Creek Ditch—and any clarification on that point should be resolved in an appropriate proceeding. Regarding 76D

118115-00's inclusion in the caption of the order, we agree with QCC that the Water Court's order was limited to actual Indian Creek rights—"The Agreement subordinates [Hark's Indian Creek water rights] . . . to QCC's rights on Indian Creek"—and had no effect on 76D 118115-00, which is a Derozier Creek right.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The Water Court's conclusions of law are correct, and it did not abuse its discretion by its procedural rulings.

¶14 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR